**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE** § | | **Chapter 11** |
| §<br>**ABC DENTISTRY, P.A.,** *et al.*[1] § | | **Case No. 16-34221** |
| §<br>**DEBTORS.** § | | **Joint Administration** |
| § | | **Requested** |

**DECLARATION OF IRAJ S. JABBARY, D.D.S.**
**IN SUPPORT OF FIRST DAY MOTIONS**

I, Iraj S. Jabbary, D.D.S., declare as follows under penalty of perjury:

1.      I am the Director of ABC Dentistry, P.A. ("ABC"); the Sole Member of ABC Dentistry West Orem, P.L.L.C. ("ABC West Orem"); and the Sole Member of ABC Dentistry Old Spanish Trail, P.L.L.C. ("ABC OST," together with ABC and ABC West Orem, the "Debtors"). I own and operate the Debtors and am familiar with their day-to-day operations, business, and financial affairs.

2.      I submit this Declaration to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these cases and in support of the Debtors' petitions for relief under chapter 11 of the Bankruptcy Code and the pleadings filed by the Debtors on or around the Petition Date. I have reviewed the factual support set forth in each of the first day pleadings and attest to the accuracy thereof. Except as otherwise indicated, all facts set forth herein are based on my personal knowledge, my discussions with other employees of the Debtors', my review of relevant documents, or my opinion based on upon

---

[1]    The Debtors in these chapter 11 cases are:  ABC Dentistry, P.A.; ABC Dentistry West Orem, P.L.L.C.; and ABC Dentistry Old Spanish Trail, P.L.L.C.

experience, knowledge, and information concerning the Debtors' operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

3.      This declaration has two parts. Part One of this Declaration provides an overview of the Debtors' business, capital structure, events giving rise to these chapter 11 cases. Part Two summarizes the relief requested with respect to, and the support for, the Debtors' various first day motions and requests for related interim and final orders.

PART ONE:  FIRST DAY NARRATIVE

**I.      <u>Overview of the Debtors and their Business</u>**

4.      ABC, ABC West Orem and ABC OST are part of a family of six clinics doing business as ABC Dental in the Houston area. The Debtors employ approximately 40 people. Eighteen dentists rotate to provide services to the Debtors' patients and the patients of four other affiliated clinics, though six dentists are the primary health care providers to the Debtors' patients. The clinics provide a variety of dental and orthodontic services to their patients, a substantial majority of which are pediatric patients and are on Medicaid assistance. As of the Debtors' bankruptcy filing, the Debtors have seen more than 2,000 patients in August alone. Together, the six ABC Dental clinics have seen more than 5,000 patients in August alone.

5.      I own and operate the six ABC Dental clinics, two of which are debtors in possession in these bankruptcy cases.[2]  Only one of the Debtor-clinics (ABC West Orem) is a party to a secured lending facility. ABC West Orem has an outstanding term loan with First Bank & Trust East Texas in the approximate amount of $298,364.96. Further detail regarding this loan is contained in the cash collateral motion that was filed on August 26, 2016.

---

[2] ABC Dentistry, P.A. is not a clinic and does not see patients.

II.   **Events Leading to Bankruptcy**

6.     The Debtors and I are health care providers who participate in the Texas Medicaid Program.  Under that program, the Debtors, their dentists and staff, and I provide medically necessary dental and orthodontic services to Medicaid patients.

7.     Dr. Saeed Rohi, a disgruntled former employee, has sued ABC West Orem, ABC OST, myself and two non-debtor entities, ABC Dentistry Pasadena, P.A. and ABC Dentistry Hillcroft, P.L.L.C.  Dr. Rohi brought his suit not only as a qui tam relator, alleging violations of Texas Human Resources Code chapters 32 and 36, but also as an ordinary plaintiff seeking common-law damages for related breaches of contract and torts stemming from his two-month employment.   He alleges, among other things, that we defendants billed Medicaid for unnecessary dental services and submitted falsified claims such that many children were harmed through the provision of unnecessary dental procedures.

8.     Dr. Rohi also sought partial summary judgment against all defendants in his suit, except for ABC Dentistry Hillcroft, P.L.L.C., based exclusively on alleged violations of subsection 36.002(8) of the Texas Human Resources Code, which prohibits a person or entity making a claim under the Medicaid program from knowingly failing to indicate the type of license and the identification number of the licensed health care provider who actually provided the service.  For this alleged technical violation, Dr. Rohi sought civil penalties of over $24 million.

9.     Dr. Rohi did not support any of his claims with an expert report under the Texas Medical Liability Act.  Thus, we defendants filed a Motion to Dismiss based on Dr. Rohi's failure to provide an expert report indicating whether those alleged acts were a breach of the standard of care, as required in medical liability cases.  The trial court issued an order denying

our Motion to Dismiss on May 6, 2016.  In response, we timely filed an appeal, as authorized by statute.  Dr. Rohi and the trial court were immediately notified of the interlocutory appeal, as well as our objection to the trial court conducting further proceedings during the stay that resulted from the appeal.

10.     Although the trial court acknowledged our pending appeal, on May 27, 2016, it issued an order setting the case for trial on September 19, 2016.  A few days later, on May 31, 2016, the trial court granted Dr. Rohi's motion for partial summary judgment on liability, while denying it, for the moment, on damages.

11.     In the wake of the May 31 order granting partial summary judgment on the issue of liability, Dr. Rohi continued to push the trial court to issue merits rulings.  On June 3, 2016, he filed a supplemental brief on the issue of damages, penalties, and attorney fees.  We defendants again objected and, on June 4th, 2016, petitioned the Fourteenth Court of Appeals of Texas for mandamus relief from the trial setting, grant of partial summary judgment on liability, and any further consideration of the summary judgment motion.  The court of appeals denied our petition on August 11, 2016.

12.     The very next day, the trial court, interpreting Dr. Rohi's supplemental brief to be a motion to reconsider the partial summary judgment, ordered a response by August 26 and stated that the motion to reconsider would be ripe on August 29.  Given the trial court's refusal to stay the case despite the statutory directive, we defendants could be hit with a crippling $24 million dollar judgment.  As such, we petitioned the Texas Supreme Court for a writ of mandamus on August 18.  That petition, along with the interlocutory appeal to the Fourteenth Court of Appeals from the denial of our motion to dismiss for failure to file an expert report, still pends.

## PART TWO: TESTIMONY IN SUPPORT OF FIRST DAY RELIEF

**A.** **Wages and Benefits Motion**

13.     The Debtors seek authority to (i) pay prepetition wages, salaries, and other compensation; (ii) pay prepetition payroll taxes and benefits and continue benefit programs in the ordinary course; and (iii) direct banks to honor checks for payment of prepetition Payment and Program Obligations (as defined below) (the "Wages Motion").

14.     As of the Petition Date, the Debtors employ or are responsible for funding the payroll obligations for approximately 40 people (the "Employees").   In addition, the Debtors contract with 18 independent contractors (the "Independent Contractors"), Dentists rotate  to  provide services to the Debtors' patients and the patients of four other affiliated clinics.

15.     The Debtors employ Paychecks, Inc. ("PayChex") as their all-inclusive payroll service provider.  PayChex performs all services related to the Debtors payroll, including payroll deductions and tax withholdings.  Each Debtor maintains an account with JPMorgan Chase Bank, NA ("Chase Bank") into which each Debtor places funds for payment to their respective Employees.  Debtors pay PayChex approximately $2100 per month for all services PayChex performs for the Debtors.

16.     Some Employees are paid on an hourly, bi-weekly basis (the "Hourly Employees") and the rest are paid on a salaried, semi-monthly basis (the "Salaried Employees"). Hourly Employees are paid every other Friday for the two-week period concluding on the Saturday of the previous week.  The Debtors' average aggregate net compensation (i.e. exclusive of the applicable deductions and withholdings noted below) paid to Employees for wages and salaries is approximately $34,025 (bi-weekly) to the Hourly Employees and $31,350 (semi-monthly) to the Salaried Employees.  These amounts may fluctuate depending on the need for

hourly and salaried employees in connection with active company projects.  As of the Petition Date, a total of approximately $14,500 in Employee compensation has accrued but remains unpaid.

17.     Further, the Debtors offer eligible Employees a monthly performance bonus plan based on published criteria.  These bonus amounts are discretionary but constitute a significant portion of the Employees' annual income.  In 2015, the Debtors approved and distributed a bonus payment of approximately $436,850 in monthly bonus payouts.  Thus far in 2016, Debtors have distributed approximately $295,000 in monthly bonuses.  For 2016, the potential bonus pool will range from 15-30% of base pay.

18.     Independent Contractors are paid and managed at each individual business unit of the Debtors.  The frequency of payment to Independent Contractors is bi-monthly.  The Debtors' average aggregate monthly paid compensation to Independent Contractors is approximately $138,000, exclusive of the deductions and exclusions detailed below.  As of the Petition Date, a total of approximately $60,250 in Independent Contractor Employee Compensation has accrued but remains unpaid.

19.     In providing benefits to the Employees, the Debtors pay and incur a number of obligations such as compensation, deductions and payroll taxes, incentive programs, health benefits, workers' compensation benefits, life insurance, accidental death and disability benefits, and other benefits, including employee contributions, claims and administrative fees to benefit providers, which the Debtors have historically provided and funded in the ordinary course of business. The Debtors seek authority to pay Employee compensation-related obligations, including wages, salaries, expense reimbursements, benefit obligations, and related fees, deductions and withholdings, including payroll taxes as provided in the Wages and Benefits

6

Motion.  The Debtors estimate that approximately $19,000 has accrued and is outstanding on account of the Payment and Program obligations.

20.     I believe the vast majority of the Employees rely exclusively on their compensation to pay their daily living expenses.  Both wages and the benefit programs discussed in further detail in the Wages and Benefits Motion are critical components of the Employees' total compensation package, and if the Debtors are not permitted to honor their outstanding Employee obligations, I believe many Employees will be exposed to significant financial difficulties. Moreover, if the Debtors are unable to satisfy such obligations, Employee morale will be jeopardized at a time when Employee support is critical. Any resulting loss in workforce could significantly hinder the Debtors' efforts to successfully reorganize.

21.     The Debtors also have various Employee programs and obligations that are administered or paid through third-party administrators, agents, consultants, or providers. The Debtors seek authority to pay any prepetition fees of these third parties and to continue such payments post-petition in the ordinary course of their business, in order to insure the uninterrupted delivery of payments or other benefits to the Employees.

22.     I believe that the relief requested in the Wages and Benefits Motion is in the best interests of the Debtors' estates and will enable the Debtors to continue to operate their business during these chapter 11 cases without disruption so as to avoid immediate and irreparable harm to Debtors' estates. Accordingly, I respectfully submit that the Wages and Benefits Motion should be approved.

**B.     <u>Utilities Motion</u>**

1.     The Debtors seek entry of an interim order (the "Interim Order"), pending the entry of a final order or the Interim Order becoming a final order (the "Final Order"), (i)

prohibiting the Utility Companies from altering, refusing, or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (ii) determining that the Utility Companies have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (iii) approving the Debtors' proposed offer of adequate assurance and procedures governing the Utility Companies' requests for additional or different adequate assurance; and (iv) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion.  The Debtors also request that, upon entry of the Interim Order, the Court schedule a final hearing (the "Final Hearing") on the Motion to consider the relief requested herein on a final basis (the "Utilities Motion").

23.     The Debtors obtain electricity, water, telephone, internet, and/or other similar services (the "Utility Services") from certain utility companies (the "Utility Companies").  To provide adequate assurance of payment to the Utility Companies, the Debtors submit that an amount equal to one-half of one month's Utility Service payment (calculated as a historical average over the past twelve months) (an "Adequate Assurance Deposit"), together with the Debtors' ability to pay for future Utility Services in the ordinary course of business, provides sufficient adequate assurance of payment and that no additional deposit, security, or other assurance of payment is or should be required for the Utility Services.  A list of the names and addresses of the Utility Companies and proposed Adequate Assurance Deposits is attached as Exhibit A to the Utilities Motion.

24.     The proposed procedures provide that a Utility Company must make an initial request for a Utility Deposit within 30 days of the Petition Date.  In the event that any Utility Company believes the Utility Deposit does not provide satisfactory assurance, the proposed

procedures allow such Utility Company to serve a request for an additional deposit on the Debtors and their counsel.  The Debtors shall then have a brief period to seek to resolve the request by agreement without further order of this Court.  If the Debtors believe that the additional request is unreasonable and/or is unable to resolve the request, then the Debtors shall request a hearing before this Court seeking a determination from the Court that the proposed deposit, plus any additional consideration that may be offered by the Debtors, constitute adequate assurance of payment within the meaning of Section 366 of the Bankruptcy Code. Pending such a hearing, any Utility Company that is the subject of the unresolved request may not alter, refuse, or discontinue services to the Debtors.  In addition, any Utility Company that fails to make a timely request shall be deemed to have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code.

25.     I believe the proposed procedures are reasonable and it is my understanding they are consistent with those provided by debtors in similar Chapter 11 cases.  In addition, I submit that uninterrupted utility service is essential to the Debtors' ability to maintain their operations, and therefore the emergency relief requested in the motion is necessary to prevent irreparable harm to the Debtors' business.

**C.     Cash Collateral Motion**

26.     Debtor ABC West Orem seeks (a) emergency relief (i) authorizing the immediate use of cash, whether or not such cash is Cash Collateral, (ii) finding that the interests of First Bank & Trust East Texas and (iii) granting related relief; and (b) interim and final hearings regarding the same.

27.     ABC West Orem is the borrower under a loan agreement with First Bank & Trust East Texas, the outstanding balance on which is $298,364.96.  The loan is secured by various

collateral including ABC West Orem's equipment, accounts, government payments, instruments, and chattel paper (collectively, the "Prepetition Collateral").  The security interest in ABC West Orem's cash and cash equivalents is collectively referred to as the "Cash Collateral" for purposes of this motion.

2.     ABC West Orem currently projects that ordinary and anticipated cash flows will be able to cover expenses for the foreseeable immediate future.  Thus, ABC WO can continue to run its business successfully, but only if it is allowed to use its cash in the course of day-to-day operations.  Without such use, the detrimental result to the estate could be rapid and detrimental, given the nature of ABC WO's business.  A copy of a proposed budget for the use of cash for the Interim Period is attached as exhibit A to the Cash Collateral Motion.

3.     I believe that the relief requested in the Cash Collateral Motion is in the best interests of the Debtors' estates and will enable the Debtors to continue to operate their business during these chapter 11 cases without disruption so as to avoid immediate and irreparable harm to Debtors' estates. Accordingly, I respectfully submit that the Cash Collateral Motion should be approved.

**D.    <u>Administrative Motions</u>**

*i.    Motion for Joint Administration*

28.     Each of the Debtors filed a motion in its respective case seeking an order directing the joint administration of these chapter 11 cases for procedural purposes only (the "Joint Administration Motion").  The Debtors request that the Clerk of the Court be directed to maintain one file and one docket for all three of the Debtors' chapter 11 cases under the case name and number assigned to ABC Dentistry, P.A.

29.     Joint administration of these cases will eliminate the need for duplicative filings, thereby saving considerable time and expense for the estates, the Court, and all parties in interest.

Joint administration will also simplify the supervision of the administrative aspects of these chapter 11 cases by the Office of the United States Trustee.  Claim and interest holders will benefit from the reduction in costs resulting from joint administration, and the Debtors accordingly request that the Court grant the order sought in the motion for joint administration. Accordingly, I believe the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates and all parties in interest.

     **ii.**    ***Motion to File Consolidated List of Creditors and Consolidated Top 20 List of Creditors, Extending Debtors' Deadlines to File Certain Schedules and Statements and to Set a Bar Date***

     30.    There are many creditors and parties in interest in these chapter 11 cases. The Debtors maintain lists of the names and addresses of all such entities on various computer programs that permit the Debtors or an outside firm to print mailing labels for each such entity. Because the preparation of separate lists of creditors for each Debtor would be expensive and time consuming, and because a large number of creditors are shared amongst the Debtors, I believe the consolidated Creditors Matrix and the Top 20 List will help alleviate administrative burdens, costs, and the possibility of duplicative service.

     31.    Further, given the amount of work entailed in gathering and analyzing all the necessary information required to complete the Debtors' schedules and statements of financial affairs, and the amount of work completing those schedules demands of the debtors employees and professionals, the Debtors anticipate that they will not be able to complete their schedules and statements of financial affairs properly and accurately within the required fourteen-day time period provided for under Bankruptcy Rule 1007(c).  Accordingly, the Debtors request that the deadline by which the Debtors must file their Schedules and Statements be September 23, 2016 (approximately 28 days from the Petition Date), without prejudice to the Debtors' right to request additional time should it become necessary.

32.     For the foregoing reasons, I believe that it is in the best interests of the Debtors, their estates and creditors, and all other parties in interest that the Court grant the relief requested.

*[Signature Page and Exhibit Follows]*

Pursuant to 28 U.S.C. § 1746, the undersigned makes the forgoing declaration as of the date of its filing under penalty of perjury.

_____
Iraj S. Jabbary, D.D.S.
Director of ABC Dentistry, P.A.;
Sole Member of ABC Dentistry West Orem,
P.L.L.C.; and
Sole Member of ABC Dentistry Old Spanish Trail,
P.L.L.C.