United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 08, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ABC DENTISTRY, P.A., *et al.*, | § § | CASE NO: 16-34221 |
| | § § | CHAPTER 11 |
| Debtors. | § § | |
| | § | |
| SAEED ROHIFARD, | § § | |
| Plaintiff, | § § | |
| | § | |
| VS. | § § | ADVERSARY NO. 18-3205 |
| | § | |
| BREWER & PRICHARD, P.C., *et al.*, | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION

Dr. Saeed Rohi moved for sanctions against his former attorneys. Dr. Rohi alleges that they failed to promptly deliver his client file and knowingly pursued a bad faith defense against him. The failure to promptly deliver the entirety of Dr. Rohi's client file warrants sanctions.

## BACKGROUND

On June 4, 2018, Dr. Rohi filed suit against his former counsel, Brewer & Pritchard, P.C., J. Mark Brewer, and A. Blaire Hickman (the "Brewer Defendants"), in Harris County, Texas for breach of fiduciary duty and breach of contract. (ECF No. 119 at 2). The Brewer Defendants moved to reopen ABC Dentistry, P.A.'s bankruptcy case and remove the malpractice litigation. (Case No. 16-34221, ECF No. 392). The Court reopened the case. (Case No. 16-34221, ECF No. 396).

On July 17, 2018, Dr. Rohi requested the "entire original client file" from the Brewer Defendants, including "all emails, correspondence, pleadings, motions, reports, memorandums,

discovery, or any other document that comprises of the client file maintained by Brewer & Pritchard." (ECF Nos. 119 at 3, 10; 119-1 at 8). The Brewer Defendants produced 790 physical pages and a flash drive with 1,032 files within 45 subfolders. (ECF No. 119 at 3–4). The Brewer Defendants did not turn over any emails. (ECF No. 119 at 4).

The Brewer Defendants moved to dismiss the malpractice litigation because it was barred by res judicata. (ECF No. 119 at 4). The Brewer Defendants argued that Dr. Rohi should have brought claims against them at the November 7, 2017 hearing because Dr. Rohi knew of the potential for claims against them. (ECF Nos. 2 at 16; 119 at 4). Dr. Rohi disagreed because he was not adverse to the Brewer Defendants during the November 7, 2017 hearing. (ECF Nos. 30 at 3; 119 at 4). The Court dismissed Dr. Rohi's claims. (ECF No. 119 at 5). Dr. Rohi appealed to the district court and the Fifth Circuit. (ECF No. 119 at 5).

The Fifth Circuit reversed and remanded. *Rohi v. Brewer (In re ABC Dentistry)*, 978 F.3d 323 (5th Cir. 2020). As instructed by the Fifth Circuit, the Court granted Dr. Rohi's motion for leave to amend. *Id.* at 326. After Dr. Rohi filed the Second Amended Complaint, Mr. Brewer and Ms. Hickman testified that they never were adverse to him. (ECF Nos. 119 at 8, 26; 119-1 at 20; 119-2 at 8; 119-5 at 4–5).

Dr. Rohi seeks: (i) $3,150 for attorneys' fees in bringing the motion for sanctions; and (ii) $115,090 for attorneys' fees to defend against the res judicata claim in this Court and on appeal. (ECF No. 119 at 31).

## JURISDICTION

The District Court is vested with original and exclusive jurisdiction for all cases under title 11 as well as original (but not exclusive jurisdiction) for cases arising under, arising in, or related to title 11. 28 U.S.C. §§ 1334(a), (b). The Court has continuous jurisdiction to interpret and

enforce its own orders.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).  The dispute in which this motion for sanctions sits ultimately concerns whether the Court's November 7, 2017 order dividing *qui tam* proceeds between Dr. Rohi, his counsel, and the state of Texas was procured by his counsel's fraud.  (ECF No. 84).

## DISCUSSION

Dr. Rohi requested his client file, including any emails.  (ECF No. 119 at 10).  The Brewer Defendants did not send Dr. Rohi any emails under the theory that emails are not part of his client file.  (ECF No. 119 at 10–11).  Dr. Rohi alleges this was done in contravention of the Texas Disciplinary Rules of Professional Conduct and in bad faith.  Dr. Rohi also alleges that the Brewer Defendants (i) pursued their res judicata claim in bad faith; or (ii) defended conflict allegations in bad faith.  (ECF No. 119 at 8).  Only the failure to promptly turn over emails warrants sanctions.

The "American Rule" generally prevents fee shifting, but federal courts may sanction parties who act in "bad faith, vexatiously, wantonly, or for oppressive reasons . . . ."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975)).  The Court may impose sanctions under its inherent power following a finding of bad faith.  *See In re Correra*, 589 B.R. 76, 125 (Bankr. N.D. Tex. 2018) ("A decision to invoke the court's inherent power to sanction requires a finding that bad faith or willful abuse of the judicial process occurred." (citing *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 729 (5th Cir. 2014))); *Resolution Tr. Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993) ("[B]efore sanctioning any attorney under its inherent powers, the court must make a specific finding that the attorney acted in 'bad faith.'" (citing *In re Thalheim*, 853 F.2d 383, 389 (5th Cir. 1988))); *Crowe v. Smith*, 151 F.3d 217, 221 (5th Cir. 1998) ("[B]ad faith is a prerequisite to the

exercise of a court's inherent power."). The Court faces a high threshold to use its inherent powers to sanction. *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citing *Reed v. Iowa Marine and Repair Corp.,* 16 F.3d 82 (5th Cir. 1994)). Indeed, inherent powers should be exercised with restraint and discretion. *Chambers*, 501 U.S. at 44.

"There is no single litmus test for determining what constitutes bad faith, though more than mere negligence is required." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (citing *Maynard v. Nygren,* 332 F.3d 462, 471 (7th Cir. 2003)). The Fifth Circuit has found that knowing misrepresentations may constitute bad faith:

> First, and primarily, the district court found that all of the sanctions defendants willfully failed to disclose the D&O Policy to the Crowes despite having a known duty to reveal it. Second, the district court found that some of the attorney defendants engaged in affirmative misrepresentations or near misrepresentations in an attempt to keep the policy a secret. Clearly, either of these grounds would be sufficient to support a finding of bad faith conduct.

*Crowe*, 151 F.3d at 236–37. If the Court finds that sanctions are warranted against the Brewer Defendants for bad faith conduct, it may order them to pay the fees that "the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017); *see also Goldstein v. Bavelis (In re Bavelis)*, 743 Fed. Appx. 670, 677 (6th Cir. 2018) (affirming the bankruptcy court's application of *Goodyear* in part concerning the recovery of costs and fees associated with efforts to obtain sanctions, which "would not have been incurred but for the [Appellants'] misconduct.").

## I. IMPROPERLY RETAINING EMAILS

Dr. Rohi argues that communications (including emails) that the Brewer Defendants made while representing him are work product which belong in his client file, and he is entitled to his entire client file under the Texas Disciplinary Rules of Professional Conduct. (ECF No. 119 at

11). The Brewer Defendants argue that emails were never part of Dr. Rohi's client file, so they did not turn any over notwithstanding that Dr. Rohi specifically requested emails. (ECF No. 163 at 32).

While not expressly applicable, federal courts may hold attorneys accountable to state codes of professional conduct. *Bright*, 6 F.3d at 341 ("The Texas Disciplinary Rules of Professional Conduct do not expressly apply to sanctions in federal courts, but a federal court may nevertheless hold attorneys accountable to the state code of professional conduct." (citing *In re Snyder,* 472 U.S. 634, 645 n.6 (1985))); *Lake Eugenie Land & Dev., Inc. v. BP Expl. & Prod., Inc. (In re Deepwater Horizon*), 824 F.3d 571, 577 (5th Cir. 2016). As Texas attorneys, the Court may hold the Brewer Defendants accountable to the Texas code of professional conduct.

The Texas Disciplinary Rules of Professional Conduct require an attorney to surrender papers and property to which the client is entitled. TEX. DISCIPLINARY R. PRO. CONDUCT 1.15(d). ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . ."). In Texas, the client is entitled to the contents of the client's file, including work product. *In re George*, 28 S.W.3d 511, 516 (Tex. 2000) (citing *Hebisen v. State,* 615 S.W.2d 866, 868 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ))); *Positive Software Sols., Inc. v. New Century Mortgage Corp.*, No. 3:03-CV-0257-N, 2008 WL 11347959, at *4 (N.D. Tex. Sept. 17, 2008) ("Texas is firmly in the camp of those states that hold the client owns the file, including any work product." (citing *George*, 28 S.W.3d at 516)); *Resolution Tr. Corp. v. H----, P.C.*, 128 F.R.D. 647, 648 (N.D. Tex. 1989) ("But so long as the files were created in the course of the representation of the client, they belong to the client."); *In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013) ("To whom does a client's file belong? The client's file belongs to the client."); *see* TEX.

COMM. ON PRO. ETHICS OP. 570 ("Under the Texas Disciplinary Rules of Professional Conduct, a lawyer must upon request provide to a former client the notes of the lawyer from the lawyer's file for that former client . . . .").

Rule 192.5 of the Texas Rules of Civil Procedure defines work product:

Work product comprises:

> (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or
>
> (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

TEX. R. CIV. P. 192.5. Notably, work product includes communications made: (i) in anticipation of litigation; and (ii) among a party's representatives. Therefore, any emails between the Brewer Defendants and other attorneys representing Dr. Rohi, such as Charles Long of Cage, Hill, & Niehaus, LLP, concerning Dr. Rohi's case are work product to which Dr. Rohi is entitled.

The Texas Rules of Civil Procedure's definition of "work product" is not dispositive. And the Texas Disciplinary Rules of Professional Conduct do not explicitly state what materials are part of a client file.[1] *See Resolution Tr.*, 128 F.R.D. at 648 ("Neither the Fifth Circuit nor the Texas Bar has defined precisely *which* materials in the file belong to the client."). Notwithstanding this potential murkiness, Mr. Brewer testified that "correspondence" is part of a client file. (ECF No.

---

[1] There are instances in which an attorney does not have to return the client file under the Texas Disciplinary Rules of Professional Conduct. *See, e.g.*, TEX. DISCIPLINARY R. PRO. CONDUCT 1.15(d) ("The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation."). The Brewer Defendants do not allege that this is a situation in which they were not required to turn over the client file, but simply that emails were not part of the client file. (ECF No. 123 at 21).

163 at 50–51). The Court agrees that a client file includes "correspondence," but disagrees with Mr. Brewer that emails are not "correspondence." (ECF No. 163 at 83). Common definitions indicate that emails are "correspondence." *See Correspondence*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/correspondence (last visited Feb. 6, 2023) ("[C]ommunication by letters or email"); *Correspondence*, Oxford English Dictionary, https://www.oed.com/view/Entry/41948?redirectedFrom=correspondence#eid (last visited Feb. 6, 2023) ("Intercourse or communication by letters."). Perhaps unsurprisingly, the Brewer Defendants include "emails" in the definition of "correspondence" in a request for production of documents they sent to Dr. Rohi on July 1, 2021. (ECF No. 168-4 at 3). The position that an "email" is not "correspondence" is not credible. Having listened carefully to the testimony and judged the credibility of the witnesses, the Brewer Defendants' unreasonable refusal to turn over emails in contravention of their duties was more than mere negligence; it was bad faith.

The Brewer Defendants argue that Dr. Rohi never served them with a request for production or a subpoena. (ECF No. 123 at 2, 12–13, 15–16, 18). It was not necessary for Dr. Rohi to do so. The Brewer Defendants had a duty to turn over the client file under the Texas Disciplinary Rules of Professional Conduct once requested. The file, including the emails, was Dr. Rohi's property. The Brewer Defendants, after receiving a demand, retained their former client's property without any justification. They failed to turn over the complete file in bad faith. The Brewer Defendants' focus on a request for production or a subpoena misses the point. Moreover, the system the Brewer Defendants use to create their client files is irrelevant to whether they should have turned over the entire client file.

The Brewer Defendants acted in bad faith by knowingly failing to produce the emails. Sanctions are warranted. Dr. Rohi seeks $3,150.00 against the Brewer Defendants[2] for the attorneys' fees he incurred in bringing his motion. (ECF No. 119 at 31). The failure to turn over emails only encompasses a portion of the motion for sanctions. Not later than 30 days after entry of this Memorandum Opinion, Dr. Rohi will file a statement explaining what amount of the $3,150.00 he incurred in bringing this motion should be allocated for the failure to turn over the emails. He will also file time entries for attorneys' fees incurred in litigating this portion of the motion for sanctions. If the Brewer Defendants do not stipulate to the amount, the Court will hold an evidentiary hearing.

## II. ADVERSITY

The Brewer Defendants moved to dismiss Dr. Rohi's claims as barred by res judicata. (ECF No. 2 at 2). The Brewer Defendants argued that "Rohi had actual or imputed awareness at the time of the attorney fee determination of a real potential for claims against the Defendants of the same type currently being asserted." (ECF No. 2 at 16). In the beginning of the September 20, 2018 subject-matter jurisdiction hearing, the Court noted that adversity between Dr. Rohi and the Brewer Defendants was not at issue in the November 7, 2017 hearing in which it allocated the *qui tam* proceeds:

> At the November 7, 2017 hearing, I didn't have presented to me adversity between Dr. Rohi and his counsel. What I had was adversity between the Dr. Rohi-affiliated parties and the State because the Debtor had just put up the money in a common fund. This was really a dispute between the State and the Rohi parties, including the Rohi counsel parties, and not a dispute between Dr. Rohi and his lawyers themselves.

---

[2] Dr. Rohi seeks to recover the $3,150.00 from (i) Mark Brewer; (ii) Blaire Hickman; (iii) Brewer & Pritchard, PC; (iv) Kenneth Zimmern (the Brewer Defendants' counsel); (v) Charles Long, and (vi) Cage, Hill & Niehaus, LLP. (ECF No. 119 at 31). Dr. Rohi subsequently settled all claims against Charles Long and his law firm. (*See* ECF No. 208).

(ECF No. 42 at 7–8) (cleaned up).  An attorney for the Brewer Defendants later stated:

> Earlier you asked, I wasn't aware of any adversity between the attorney and Dr. Rohi. And the reason you weren't is because there wasn't any. There was no adversity between Dr. Rohi because Dr. Rohi agreed that the – whatever disposition you made, he agreed to.

(ECF No. 42 at 22).  In the same September 20, 2018 subject-matter jurisdiction hearing, another attorney for the Brewer Defendants clarified that "common-fund adversity" existed between Dr. Rohi and the Brewer Defendants at the November 7, 2017 hearing:

> Adversity to a non-bankruptcy litigator is slightly different than the kind of adversity we're talking about here, and that is according to the Fifth Circuit in the post-confirmation jurisdictional analysis, it doesn't say that the parties had to be adverse to each other, not in that sense.  What the Fifth Circuit said in the second element of *In re Craig's Stores* was that there had to be sufficient claims or antagonism between the parties so that it would be expected that the issue would have been brought up at the time.  And here, your Honor, it's the same – it's in the same sense of a debtor being represented by debtor's counsel and debtor's counsel standing up here on a $20 million fee application.  Well, debtor's counsel represents the debtor, and debtor's counsel is here to get $20 million out of the estate on its fees.  There is sufficient antagonism or claim between debtor's counsel and debtor with respect to the fees because those fees are coming out of the estate.  ***The same here, it's not a conflict-of-interest type of adversity that would cause you to have to withdraw***.  But especially in the common funds scenario, there's only so much money to be distributed.  So in that sense, every dollar that goes to attorneys is one less dollar that can go to Dr. Rohi and the State which is – ***that's the sufficient kind of claim or antagonism that would have been made it necessary to bring it up at that time and that it existed at that time.***

(ECF No. 42 at 50–51) (cleaned up and emphasis added).  The Court dismissed the case, the district court affirmed, and the Fifth Circuit reversed and remanded.  The Court permitted Dr. Rohi to amend his complaint on remand, and he included claims for breach of fiduciary duty[3] and

---

3   Relating to the breach of fiduciary duty, Dr. Rohi alleges that:

> [T]he Brewer Defendants knowingly and intentionally breached their fiduciary duty and committed self-dealing by engaging in undisclosed and impermissible conflicts of interest. The Brewer Defendants have contended that there was 'sufficient claims or antagonism' between Dr. Rohi and the Brewer Defendants at the November 7, 2017 hearing for res judicata to apply. Although the Brewer Defendants knew antagonism existed, the Brewer Defendants represented Dr. Rohi at the

violations of the Deceptive Trade Practices Act ("DTPA").[4] (ECF Nos. 63 at 11–18; 109 at 14–22). These claims are "premised on the Brewer Defendants' undisclosed conflicts of interest and/or adversity towards their own client . . . ." (ECF No. 119 at 25). Allegedly, the Brewer Defendants were "secretly adverse and antagonistic to [Dr. Rohi] to induce him to agree to the bankruptcy court's allocation instead of opposing it." (ECF No. 63 at 17).

In his motion for sanctions, Dr. Rohi latches onto the Brewer Defendants' September 20, 2018 argument that there was common-fund adversity (*see* ECF No. 119 at 24, fn. 47) and compares it to interrogatory responses and depositions in which they claim that they were never adverse. (*See* ECF Nos. 119 at 26; 119-1 at 20; 119-2 at 8; 119-5 at 4–5). Dr. Rohi argues that he would not have incurred attorneys' fees in appealing the dismissal on res judicata if the Brewer Defendants had truthfully stated that they were not adverse to him from the start. (ECF No. 119 at 27). Because the Brewer Defendants later testified that they were not adverse to Dr. Rohi, Dr. Rohi believes that they made at least one of their statements in bad faith. (ECF No. 119 at 8).

The Brewer Defendants argued that they had "common-fund adversity" with Dr. Rohi at the November 7, 2017 hearing and subsequently argued that they were not adverse to Dr. Rohi such that they should have withdrawn as his representatives. This is not bad faith. Of course, there is some level of adversity in the common fund scenario when both the attorney and the client

---

November 7, 2017 hearing and never disclosed this antagonism to Dr. Rohi. At no time prior to or during this hearing did Brewer, Hickman or Long disclose to Dr. Rohi that they were adverse or antagonistic to Dr. Rohi or that their interests were not aligned. Defendants concealed their secret antagonism to ensure that Dr. Rohi would continue to trust them and agree to the bankruptcy court's settlement allocation. By doing so, Defendants placed their own interests or the interests of others ahead of their client.

(ECF No. 63 at 14).

[4] Relating to the DTPA violation, Dr. Rohi alleges that "Defendants also engaged in an unconscionable action or course of action by representing Dr. Rohi at the November 7, 2017 hearing while, at the same time, being secretly adverse and antagonistic to him to induce him to agree to the bankruptcy court's allocation instead of opposing it." (ECF No. 63 at 17).

seek payment from the same pot of money. But this does not mean the Brewer Defendants should have withdrawn as Dr. Rohi's counsel. The type of adversity to a client in the common fund scenario is not the same as the type of adversity that requires an attorney to withdraw:

> The fee, if any, which an attorney receives from a subrogee under the fund doctrine is in partial payment for his services in creating the fund from which the subrogee benefits. In the creation of the fund the client and the subrogee are not adverse litigants; rather they have the same common interest in creating the fund from which each will benefit. Concededly after the fund is created, conflicts may arise between the subrogor and subrogee as to whether, or how much, the subrogee is entitled to recover, or as here between the attorney and the subrogee as to the attorney's right to, or the amount of, a fee. A conflict which arises in the distribution of the fund, however, does not involve the type of adverse interest which would preclude an attorney from properly representing both the subrogor and subrogee.

*Baier v. State Farm Ins. Co.*, 361 N.E.2d 1100, 1103 (Ill. 1977); *see also Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 819 (D.C. 2009) ("Courts have looked favorably upon fee awards . . . where there exists some adversity between the claimants as to their respective rights in the fund."). Because Dr. Rohi has not shown that the Brewer Defendants acted in bad faith in making contradictory adversity arguments, the Court will not impose sanctions for those arguments.[5]

## CONCLUSION

A separate judgment will be entered after the Court determines, by stipulation or otherwise, the correct amount of attorneys' fees.

SIGNED 02/08/2023

                                              Marvin Isgur
                                    United States Bankruptcy Judge

---

[5] This finding does not preclude awarding attorneys' fees if Dr. Rohi succeeds on the claims set forth in the Revised Third Amended Complaint. (ECF No. 201).